Good morning, counsel. We are here for case number six of the morning. This is appeal number 20-2408 United States v. Jyshawn Jackson. We're going to begin with argument from counsel for the appellant, Mr. Drysdale. Thank you, your honors and may it please the court. My name is Tom Drysdale and I am here today on behalf of the defendant appellant Jyshawn Jackson. Your honors, the main issue before this court today is whether two separate exchanges of drugs and money separated by 58 minutes occurring in different locations after Mr. Jackson had the opportunity to abandon his criminal intent. It's two transactions or one. That, Mr. Drysdale, that sounds to me like you're arguing duplicity. Your honor, this is not duplicity. Why not? I can tell you why. Because when we look at the face of the indictment, because that is what challenges duplicity, this indictment reads that Mr. Jackson on August 15, 2019, knowingly and intentionally distributed 28 grams or more. Stop there. Stop there. You're saying he distributed it twice, right? That's what you're saying. You're saying he distributed narcotics on that day twice and therefore there should be two counts. And government lawyers do that all the time. He distributed at approximately 11 a.m. and then he distributed at approximately noon. Precisely right, Judge. It is exactly what you just said. Government lawyers do this all the time. It's a prosecutorial discretion call as to whether or not what Jyshawn Jackson did was one transaction or two. They can charge it either way. But wait a minute. But they can't if it's a question of law, right? If duplicity is a question of law, it's not a question of fact. But this isn't a duplicity argument, your honor. What we're arguing is the government can charge this case this way. The government can charge this case as a continuing course of conduct theory. Wait a minute. Wait, wait, wait, wait. What in 841A1 is a continuing course of conduct offense? It's not a there's no scheme. There's no scheme. There's no agreement. It's just distribute. It's a static offense, right? That is correct, your honor. But this court has made it very clear that the government can, even if there are two transactions, charge them as one. But charging them as one is different than proving that they are one. In what case are you referring to, your honor? United States? Well, there's a couple United States versus more. The government. This court very clearly said challenging an indictment is not a means of testing the strength or weak of the weakness of the case or the sufficiency of the government's evidence. And I would also point your honor to United States versus Davis, and that's this court as well. And this court noted that it is up to the government to decide whether to charge a continuous course of conduct or not. Is that an 841 case? It is, your honor. And it's a discretionary decision that is left to the government as to whether or not they're going to charge a continuous course of conduct theory. That doesn't mean that the government is somehow alleviated from their burden of proof. The government still has to prove that a continuous course of conduct happened. By the way, by the way, is the continuing, the continuing course of conduct instruction that was given here by the district court judge, is that a pattern instruction in the Seventh Circuit or in any other circuit? Your honor, I believe that it was an instruction that was agreed upon by the parties after Judge Mim essentially decided that the continuing course of instruction. But no, no pattern. I guess what I'm asking is no pattern exists in any of these circuits that says a continuing course of conduct instruction should be given to a jury in an 841 context. Your honor, I do believe that the first part of the instruction was a pattern instruction. I can't recall off the top of my head to be honest, your honor, but I know that this is an instruction that was fashioned after Judge Mim declared that this was a legal or this was a continuing course of conduct. Did you object to the jury instructions or the verdict form? And the reason I'm asking that is I don't know what you would have expected the jury to do here based upon the verdict form and the jury instructions. The verdict form clearly states, we the jury find the defendant guilty or not guilty of the offense of distribution of cocaine is charged in count one. Count one charges he distributed cocaine on August 15, 2019. I don't think there's any dispute that he's guilty of that offense. I don't think there is. I don't think there is either. The next question is, did the government prove beyond a reasonable doubt that the quantity of cocaine base evolved in the offense was 28 grams? What was the jury supposed to do with this other than answer? Yes, your honor. Our position would be that this never should have gotten to the jury because legally the government did not show that this happened in one continuous course of conduct. There's not a single published case out there where the distribution of drugs for money and then the distribution of drugs for money again constituted one continuous. Mr Drysdale, let me ask you a hypothetical. Yes. So suppose count one in our hypothetical charges John Doe on January one of distributing one kilogram of heroin in two steps. Step one that occurred at 10 a.m. and step two that occurred at 11 a.m. in violation of 841 B1 or 841 A1 and you know, B1A. Okay or not? Okay. And the fact pattern is the first, you know, at time one they met at Walmart and at time two they met at the Waffle House and when you add them together, there's one kilo of heroin. Your honor, according to this court, that isn't that is a permissible charge that it's okay. Now, if that's so, if that's so, then what you're right under the case is then your argument that in your argument turns to well, did the government prove it beyond a reasonable doubt? Yes, judge. Right. That is correct. Okay. One of the things that's curious to me in your brief, when you set out the standard of review, you talk about how a rule 29 motion should be evaluated like a like a motion for summary judgment and you reference rule 56 of the federal rules of civil procedure. Can you think of any criminal case where we have ever talked about a review of sufficiency of evidence in a criminal case under the civil summary judgment standard? I can't judge. I simply believe that there are cases that have have made the comparison. Um, but no, I cannot think of of a case where this court has done so. So Anderson versus Liberty Lobby, cell attacks, Matsushita, etcetera. None of that. That's neither here nor there. I believe that's correct, Judge. So the standard that we're operating under is effectively the Jackson versus Virginia standard through the prism of Rule 29. Could any reasonable jury have looked at this evidence and concluded that the elements of the charge defense were proved beyond a reasonable doubt? I think that's true, Judge. Yes. And so essentially, though, like I said, when it's ever been published on this issue, it's always the government arguing for two transactions where the defendant tries to argue. No. So why? So I think for you to prevail, what you have to persuade us of is that no reasonable jury could have interpreted this sequence of events to amount to a violation of 8 41 a one with 28 grams or more. Your Honor, we would agree that that based on the Kelly case that the government sites that acquittal is not the appropriate remedy for Mr Jackson. Okay, so why? Why? Under the standard I articulated, could the jury not find that there was a two step transaction? And when you add them together, you're over the 28 gram limit. Your Honor, simply because of the the first transaction was done under the government's theory. If Mr Jackson had went back to ran to Illinois like he did and never returned back to Champaign, he couldn't be charged with anything because he didn't complete the transaction. Of course, that's absurd. Like, okay, so part of it, my sense is that Mr Miller is going to say part of this depends upon how you define the transaction and what a jury could have concluded. One of the things that I'm very curious about is what was said when Mr Jackson pulled his car alongside, um, the CS and whoever that other person is. Um, Miller, his co defendant, I believe. Yeah, whatever her name is, Walker or something. Your Honor, I believe what was what was said. It's on. It's on a DVD that we can't get to play. What words were said? Your Honor, I believe that there was a Mr Jackson would return back to your honor. I do see I'm out of time. If I may answer your question. Yes. Okay. Your Honor, what I believe was said during that exchange was that Mr Jackson would return to Urbana Illinois with the additional amount of crack cocaine that he would then sell to the confidential source. Okay, now stop there. Why can't a jury interpret, you mean, will return with the back half of the deal? Because legally, Judge, he could have stayed home and ran tool. He never had to come back. Well, sure. Gotten. Sure, he could have. But the jury is dealing with what actually happened in reviewing it under the standard we just agreed upon. If you had stayed at home, I wouldn't have been charged. There would have been no second step, and it wouldn't have been charged that way. And that's precisely why the jury never should have been allowed to consider this. The judge should have ruled that this was legally two separate transactions. Thank you, Mr Drysdale. Mr Miller, let's move to you now. Argument for the Apple Leaf. May it please the court counsel. Um, we are, of course, asking if the court affirmed the conviction and sentence of the district court in this case because we believe it was not only properly charged as one offense, but in addition, the jury found both the 8 41 a one offense and that the offense involved more than 28 grams of crack. Um, beyond a reasonable doubt, and the evidence towards that, Mr. Can I ask you a question? Yes, please. Could could the government here have charged the defendant with possessing with the intent to distribute and distribution of crack in the same count? That's charged all the time, isn't it? That honor about it is defended, possessed with intent to distribute and distributed crack cocaine. And then if he possessed it, he's with the intent to distribute. He's guilty. And if he distributed it, he's guilty. Correct, Your Honor. Because we would say that really incorporates federal current Procedure seven, which talks about an offense may be charged by if different means are used to complete an offense, they may be charged separate conduct as one offense. But here you only charge here. You only charged distribution, which means transfer. So how do we draw the line as to whether or not this was one transfer or that this was multiple transfers putting aside the waiver issues and the duplicity issues and things like that? How do we as a court, how do we draw the line and instruct lower courts that in this case it was one transfer, where in another case it would be two transfers as to incorporate what the Davis case said. And as my understanding, the Davis case is that was a duplicity case, but was not an 8 41 case that it was a fraud case. But in that case, the court talked about the line is a difficult line, but doesn't but but but hold on for a second. I don't think scheme cases. I think scheme cases are totally different, and they don't help us in that analysis because 8 41 is clearly a static offense. You distribute. You're guilty. There's no continuing course of conduct under 8 41 or is there? Well, we I agree with that. As far as the scheme cases, your honor, and I was just commenting on the question to the defense counsel whether Davis was an 8 41. We agree that is is an issue. I think the unit of prosecution, I believe, is a distribution. But where you draw the line is, as said by the cases, it is a difficult line to draw, and it's one that's gonna be based on the specific facts of the case. But yes, hasn't Congress drawn it for us? Well, I think if we look at cases, if you're suggesting it's just each time you hand drugs to another individual, the answer would be no, because we know that in a case, in fact, I think the Fourth Circuit case that was cited by defense says that if you're in a transaction where a defendant hands one baggy to a confidential source, then hands another baggy to another competent to a confidential source, then hands a third baggy to a confidential source at the same time, same place, same confidential source that must be charged as one offense is at least what I believe the Fourth Circuit has said. So it's not so clear that simply one distribution is, um, must each distribution must be charged separately. I think as we look at the facts in this case, we believe that the facts established this is one distribution. Uh, as there was an agreement to distributing 35 grams of cocaine for $1800 and to get to the court's question when the defendant showed up, it was supposed to be the agreement was it was gonna be two bags to complete that distribution. And we all would agree if the defendant had showed up with the two bags handed one bag at that time, handed the second bag at that time that that would be one distribution. At least I believe that's what the cases say. Um, in this case, so the defendant chose to only show up with the one back when Mr Miller, what happens? What happens? The second the defendant goes back to his house, he gets a second bag of crack cocaine. He happens if your informant an hour later was not available. So the D. A. I don't know this D. A. F. B. I. Case doesn't matter. But let's say the D. A. The D. A. Sends in a different informant to retrieve the second bag of cocaine. The defendant's conduct has not changed. Is that still one transaction or does that now become two? I would argue under these facts, that's one transaction. There was one transaction for 35 grands and a key to answer the court's question. As we put in our brief, why did the defendant say when he pulled up along the C. S. Before leaving the scene of the of the initial meeting, he said, I'm going to get the rest. I think that's a key fact here. He didn't say I'm going to go get you more crack cocaine to do a separate deal. He said, I'm gonna get you the rest. In other words, I'm going to complete the transaction that we negotiated again. It's gonna be fact specific in a case. The line, as we noted, is not always easy to draw. But we think in this case, this is clearly on the side of a single transaction. We could see a defendant complaining if it was charges to wait a second. There was one negotiation. There was, I think another key point here is the negotiation, though, occurred between the C. S. And that who's that co defendant Walker Walker Marnetta Walker? Yes, Your Honor. Yeah. Okay. And I think that actually makes this more one transaction. And the reason I say that is because Walker and the C. S. Were together the entire time. They never left each other's company and recall. Both defendants were charged in this single count together. Walker pleaded guilty to the single count distribution of more than 28 brands of cocaine and out Jackson's trial. There was a aiding and abetting instruction. So there is a little more nuance. There's not an 8 46 charge, though, either. And so that's why there's not, Your Honor. Right. And Jackson didn't talk to the C. S. And negotiate the original terms and conditions of the deal, right? So correct. So we get Jackson involved when they're doing the pull up in the first parking lot. That's correct. But the C. S. Talked to Walker. Walker was convicted up and pled guilty to the single count distribution of 28 grand. So if Jackson is an eight or in a better of that, regardless of whether he even talked to the C. S. Then he is guilty of the Even under those facts again, we have Walker, who's pled guilty to those facts as one account distributing more than 28 grams. Walker stayed with the C. S. Throughout the entire transaction. They're being that between Walker and the C. S. Was to do a one deal for 28 grams. The C. S. Was gonna call off the deal when the C. S. Didn't get the second baggy and only was convinced by both Walker and Jackson to complete the deal because Jackson was going to get the rest. So was it that occurred within an hour? Was it your theory that this was an attempt by Jackson toe? Um, you know, this was a shorty. Well, it is certainly a short. Um, we don't have evidence in the record as to why Jackson would do that. We certainly know that there are defendants who are savvy enough to attempt to deliver amount of narcotics that would be underneath the threshold. We don't have any evidence that that's what took place in this case. He's certainly Jackson and Walker shorted the C. S. On both the 28 gram baggy. It was about 26, which is not unusual at all. And then the seven gram baggy. Um, but as to whether Jackson intended try to avoid the threshold, it's certainly a possible criminal code threshold. I'm sorry. You're talking about the criminal code threshold? Yes. No, no, no. I I'm thinking of it much more simply. Sell less, sell less drugs, get more money. Not for sure. C. S. Would have a scale in the car. Right, right. I think we all anyone who's been involved in drug transactions understands that dealers routinely short here. He shorted the C. S. On the 28 grams and didn't even bring the second baggy. The problem for Jackson here was that the C. S. Said specifically negotiated with Walker. There would be two baggies, a 28 and a seven gram, and he only showed up with the one bag. Um, and so then the C. S. Says, Well, I didn't even get my second baggy. But I think you're exactly right that Jackson, of course, was trying to get more money for less for selling less drugs, which is which is also an important point here on the amounts. I know it's in our brief, but really is that to show this was a completed deal when Jackson showed back up and was paid the remainder of the agreed $1800 $300. If this was a separate deal, Jackson would and Walker would have been selling a smaller amount for a lesser amount per gram. And we know that and there was expert testimony at the trial that when drug dealers, just like any wholesaler when they chart sell larger amounts, they charge less per gram. Mr Miller, let me let me let me switch topics with you real quick here before we run out of time. Um, if if we find if we find that this is duplicity, should we treat the defendant's Rule 29 motion as an untimely Rule 12 motion? Well, I think whether it's whether you would find your policy or not, it was an untimely motion under Rule 12 B. I for the reasons we state in our brief, this is clearly something that they would know about before trial that they should have brought. This is a duplicity argument in our in our estimation, Your Honor, and it's untimely. And I urge the court on this to not just the waiver and go to the merits because I think there are some good case law out there that discusses the importance of enforcing those Rule 12 B three limitations to avoid precisely the confusing situation that happened in this case with non pattern jury instructions. Just to answer the court's question. That was not a pattern instruction on the continuing course of conduct. That was an instruction caused by the defendant's untimely Rule 12 B motion. Thank you. Thank you. Mr Drysdale will give you a minute and rebuttal. Thank you, Your Honor. The instruction was caused by the government's duplicity argument that they made at 7 30 p.m. in the middle of trial. The indictment is not duplicitous on its face. The indictment very clearly on its face is not duplicitous, and that is the standard for the Rule 12 motion. The government's entire argument on the continuing course of conduct theory hinges on in the Marines, but it doesn't matter what they agreed to. It matters what they did. And this agreement argument was tried by the defendant in United States versus weather. And that's the circuit case that we cite where there was a distribution of drugs for money. There was an eight minute gap, and there was a second distribution of drugs for money. And the defendant said, Well, we agreed originally to one transaction, and therefore that's what I'm guilty of. And the Eighth Circuit said, No, Congress has defined delivery and distribution. And they based on that definition, Dyson Jackson distributed drugs twice on August 15 2019. We asked for a remand for resentencing. Thank you. Thank you, Mr Drysdale. Thank you, Mr Miller. The case will be taking her advisement, and the court will stand at recess.